NO. 07-03-0076-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

DECEMBER 30, 2003

_____

BETTY GAIL KIRKSEY, individually and as independent executrix
of the estate of HERSHEL ALFORD BOSS, BARBARA LEE PERDIGAN,
MARY OMEGA ROYS, RONNIE JOE BOSS, DAVID GARREL BOSS,
and DOLORES BARBER

Appellants

v.

SAMBASIVA R. MARUPUDI, M.D.,

Appellee

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 84,325-E; HONORABLE ABE LOPEZ, JUDGE

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

Appellants Betty Gail Kirksey, individually and as independent executrix of the

estate of Hershel Alford Boss, Barbara Lee Perdigan, Mary Omega Roys, Ronnie Joe

Boss, David Garrel Boss, and Dolores Barber (collectively referred to as Kirksey) appeal

from an order dismissing their medical malpractice claim against appellee Dr. Sambasiva

R. Marupudi (Marupudi). Through six issues, she alleges that the trial court erred in

finding that 1) her expert report failed to meet applicable requirements and 2) the inadequacy was intentional or the result of conscious indifference. We affirm the order of the trial court.

## *Background*

On December 3, 1997, the appellants, who are the children of Hershel Alford Boss, filed a lawsuit alleging medical malpractice on the part of Marupudi. The latter had performed surgery on Boss for colon cancer. During the patient's hospital stay, the 81-year-old fell while getting out of bed and broke his hip. After surgery on his broken hip, his condition deteriorated, resulting in his death. Kirksey claimed that Marupudi was negligent in failing to prevent the fall.

On March 3, 1998, Kirksey filed her expert report as required under article 4590i of the Texas Revised Civil Statutes. Four years later, on May 14, 2002, Marupudi filed a motion to dismiss the lawsuit on the basis that the report failed to meet requirements mandated by statute and case law. In response, Kirksey filed a motion seeking a 30-day grace period (if the court should find the report deficient) on the basis that the failure to comply was neither intentional nor the result of conscious indifference. After a hearing, the trial court granted the motion to dismiss and denied that requesting a 30-day grace period. **Issues One, Two, Three - Good Faith Expert Report**

In her first three issues, Kirksey disputes the findings of the trial court with respect to the adequacy of her expert report. We overrule the issues.

*Applicable Law*

One suing another for medical malpractice must

2

[n]ot later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period . . . (1) furnish to counsel for each physician . . . one or more expert reports, with a curriculum vitae of each expert listed in the report; or (2) voluntarily nonsuit the action against the physician. . . .

TEX. REV. CIV. STAT. ANN. art. 4590i, §13.01(d) (Vernon Supp. 2003).[1]  Should the plaintiff not do so, then the trial court must

. . . on the motion of the affected physician . . ., enter an order awarding as sanctions against the claimant or the claimant's attorney: (1) the reasonable attorney's fees and costs of court incurred by that defendant; (2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the extent necessary to pay the award; and (3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling.

*Id.* §13.01(e); *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (stating that the cause must be dismissed if the trial court determines that the report does not represent a good faith effort to comply with the definition of an expert report).  However, if a report is timely filed, the opponent may still challenge its adequacy.

Next, to be adequate, the report must be written by an expert and provide a fair summary of that expert's opinions regarding the applicable standards of care, the manner in which the care rendered deviated from those standards, and the causal relationship between the deviation and the injury allegedly suffered.  *Id.* at §13.01(r)(6); *Chisholm v. Maron*, 63 S.W.3d 903, 906 (Tex. App.--Amarillo 2001, no pet.).  In other words, the expert must do more than merely voice his opinions in the report.  He is obligated to also inform

---

[1]As of September 1, 2003, the provision is now found at §73.351 of the Civil Practice and Remedies Code.  Furthermore, the claimant no longer has 180 days to serve the report but only 120.  TEX. CIV. PRAC. & REM. CODE ANN. §74.351(a) (Vernon Supp. 2004).  However, because the trial court dismissed the suit before September 1, 2003, we cite to the old statute.

the defendant of the *specific conduct* called into question and provide a basis for the trial court to conclude that the claims have merit. *American Transitional Care Ctrs, of Tex. Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001); *Chisholm v. Maron*, 63 S.W.3d at 906. And, though this does not require the claimant to marshal all his evidence, *Rittmer v. Garza*, 65 S.W.3d 718, 723 (Tex. App.--Houston [14th Dist.] 2001, no pet.), more than mere conclusions about the standard of care, its breach, and causation must be uttered. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d at 879. Finally, in assessing the adequacy of the report, the trial court can look no further than to the four corners of the report. *Bowie Memorial Hospital v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d at 878.

*Application of Law*

The report at bar was provided by Dr. Kalpanba M. Kumar, an individual board certified in internal medicine. The doctor criticized the failure of Marupudi to use measures to prevent Boss' fall. The first measure alluded to was the failure to write a standing order for anxiolytic medication on an as needed basis. Such medication was purportedly necessary to treat the patient's "transient disorientation and anxiety" which "may have led him to attempt to get out of bed and subsequently fall." This omission would constitute negligence, in the expert's view, "if the patient had attempted to get out of bed and fall, due to confusion and disorientation." The second measure involved the failure to order restraints "[i]f the nurses had . . . discussed Mr. Boss's confusion and combativeness with Dr. Marupudi." Yet, nothing in the report suggests that Boss fell due to disorientation and anxiety or that the nurses informed Marupudi that his patient was suffering from

4

disorientation or had a history of it.  Moreover, Kumar does not opine that the standard of care required that every patient who slipped and fell once in the hospital should be placed in restraints and given anti-anxiety medication to prevent subsequent falls.  Instead, the doctor's opinions are based on the assumption that Boss fell due to disorientation and confusion even though the circumstances described in the report do not indicate that he was actually experiencing such a condition when he fell.

So what we have before us is an opinion accusing Marupudi of negligence. Yet, the opinion is dependent upon the occurrence of particular circumstances, and the expert does not suggest, in the report, that those circumstances actually occurred.  This is problematic for the report must give the trial court sufficient information upon which to initially decide whether the claim is frivolous. *American Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d at 879.  In other words, since it must enable the trial court to hold that the claim has merit, logic dictates that it contain sufficient information to enable the trial court to make that decision.  Given that whether a physician acted negligently depends upon the circumstances confronting the doctor, *see Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex. 1993) (stating that a "physician has a duty to act as would a physician of reasonable and ordinary prudence under the same or similar circumstance"), it also follows that before any assessment can be made about the existence of a duty and its breach, the circumstances confronting the physician must be revealed.  And, if the trial court must be in a position to hold that the claim is meritorious and can look no further than to the report itself, then the latter must of necessity reiterate the pertinent circumstances.  Indeed, this

is at least one reason why mere conclusions regarding the standard of care, its breach, and causation do not satisfy the definition of an expert report.

As previously mentioned, the expert's opinions here were and are founded upon hypotheticals. Again, Kumar does not specify the circumstances confronting Marupudi. Rather, the doctor simply posits the theorum that *if* X occurred (and assuming Marupudi knew of it), then Y was the appropriate response. Whether X occurred or whether Kirksey or Kumar alleged X occurred goes unmentioned in the report. And, because it does, the trial court lacked sufficient information about the circumstances of the dispute to determine whether Marupudi had a duty to act, breached that duty, if any, and whether that breach caused, in any way, Boss' death. Thus, the trial court did not abuse its discretion in either concluding that the expert report fell short of that required by *Palacios* or in dismissing the suit. *See Bowie Memorial Hospital v. Wright,* 79 S.W.3d at 52 (stating that whether a trial court erred in dismissing the suit depends upon whether it abused its discretion).

Finally, we do not hold that a claimant must marshal his evidence in the expert report. As previously mentioned, that is not required. Yet, neither are conclusory statements permissible. Instead, to conform to the dictates of *Palacios*, the report must contain a description of the circumstances confronting the doctor and which purportedly obligated him to respond in a particular manner. Without them, no one can determine how a reasonable physician would have acted or whether the conduct actually undertaken caused any injury. Indeed, this is nothing more than requiring a plaintiff to give a defendant fair notice of his claim.

### *Issues Four, Five, and Six - Grace Period*

6

In her last three issues, Kirksey argues that the trial court erred by refusing to grant a 30-day grace period to provide an adequate expert report. We overrule the issues.

Article 4590i, §13.01(g) of the Revised Civil Statutes provided:

Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection . . . .

Kirksey believed herself entitled to the aforementioned grace period because her failure to provide an adequate report purportedly arose from her attorney's belief that the document met the applicable requirements. While this would have entitled her to an extension at one time, *see e.g. In re Rodriguez*, 99 S.W.3d 825, 828-29 (Tex. App.-- Amarillo 2003, orig. proceeding) (holding that an attorney's mistaken belief that a report was sufficient satisfied the prerequisites for obtaining the 30-day grace period), that is no longer true. After we issued *Rodriguez*, the Supreme Court held that "a purportedly mistaken belief that the report complied with the statute does not negate a finding of 'intentional or conscious indifference.'" *Walker v. Gutierrez*, 111 S.W.3d 56, 65 (Tex. 2003). Given this, the trial court did not err in rejecting the basis upon which Kirksey alleged she was entitled to the extension.

Accordingly, the judgment of the trial court is affirmed.

Brian Quinn
Justice

7